TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
KERRY L. QUINN (Cal. Bar No. 302954)
Assistant United States Attorney
Major Frauds Section
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorney
Acting Chief, Public Corruption & Civil Rights Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-5423 / x0304
Facsimile: (213) 894-0141
E-mail: Kerry.L.Quinn@usdoj.gov
Juan.Rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER SOOFER,<br><br>Defendant. | No. CR 2:26-00077-MWF<br><br><u>PLEA AGREEMENT FOR DEFENDANT ALEXANDER SOOFER</u> |

1. This constitutes the plea agreement between ALEXANDER SOOFER ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

//

//

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to the single-count Indictment, which charges defendant with Wire Fraud in violation of 18 U.S.C. § 1343, and give up the right to indictment by a grand jury and, again at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to the single-count First Superseding Information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Money Laundering in violation of 18 U.S.C. § 1957.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Agree that any and all criminal debt ordered by the Court will be due in full and immediately. The government is not

precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of guilty pleas, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Asset Forfeiture and Recovery Section at 312 N. Spring Street, 11th Floor, Los Angeles, CA 90012. Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j. Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k. During any period of pre-trial release, incarceration, probation, and/or supervised release, not to sell or transfer any assets worth more than $10,000, individually or collectively with other assets, without the USAO's prior written agreement, and at all times, cooperate with the USAO in establishing a schedule for payment of restitution, which will include limits on defendant's sale or transfer of assets, as set forth in the USAO Asset Agreement, which is attached as Exhibit B.

l. Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

FORFEITURE AND FINANCIAL ACCOUNTABILITY

3. Defendant further agrees:

a. To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following (collectively, the "Forfeitable Property"):

i. One 2023 Land Rover Range Rover, VIN SALKBFU2PA042158 (AFTRAK 95260027-01);

ii. Approximately $17,715.00 in U.S. currency seized from the 2023 Land Rover Range Rover (AFTRAK 95260028-01);

iii. Approximately $950.00 in U.S. currency seized from closet shelf at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260028-02)

iv. Approximately $1,310.00 in U.S. currency seized from master bathroom counter at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260028-03)

v. Rolex Cosmograph Daytona 18K yellow gold with blue racing Arabic dial seized from master bedroom cabinet at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260029-01)

vi. Cartier Tank Francaise stainless steel watch seized from master bedroom cabinet at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260029-02)

vii. Cartier Ballon Bleu watch with stainless steel case and bracelet seized from master bedroom cabinet at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260029-03)

viii. Bottega Veneta Knot Minaudiere clutch bag seized from closet shelf at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260029-04)

ix. Chanel Classic flap bag seized from closet shelf 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260029-05)

x. Forty (40) 2024 St. Helena King Charles Ill 1 ounce 999 silver coins seized from closet at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260029-06)

xi. Forty (40) 2024 St. Helena Queen Elizabeth II 1 ounce 999 silver coins seized from closet at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260029-07)

xii. Six (6) 1998 American Platinum Eagle $100 bullion coins seized from closet at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260029-08)

xiii. Two (2) one-ounce American Gold Buffalo coins seized from closet at 919 Hilts Avenue, Los Angeles, CA (AFTRAK 95260029-09) (collectively, the “Forfeitable Property”).

b. To the Court’s entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the assets.

c. That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

d. To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

e. Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property. If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property. Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

f. Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

g. Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

h. To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

i. To fill out and deliver to the USAO a completed financial statement listing defendant’s assets on a form provided by the USAO.

j. That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

k. That with respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory

challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant’s guilty pleas.

4. Defendant further agrees:

a. To the entry of a personal money judgment of forfeiture against defendant in the amount of $1,960,463.39, which sum defendant admits was derived from proceeds traceable to the violations described in the factual basis. Defendant understands that the money judgment of forfeiture will be part of defendant’s sentence, is in addition to the Forfeitable Property set forth in Paragraph 3, and is separate from any fines or restitution that may be imposed by the Court.

b. To take whatever steps are necessary to have the Court enter the money judgment of forfeiture as soon as his changes of plea are entered pursuant to this Plea Agreement.

c. To pay to the United States the full amount of the money judgment of forfeiture on the following schedule, with payments to be made no later than the listed dates and pursuant to the additional terms set forth in the USAO Asset Agreement:

| Date | Amount |
|---|---|
| 12/31/2026 | $500,000 |
| 3/31/2027 | $500,000 |
| 6/30/2027 | $500,000 |
| 9/30/2027 | $460,463.39 |

d. Defendant agrees that if he does not make any and all of the payments pursuant to this schedule, then defendant, on behalf of himself and as the managing member of The Lucky Lizard LLC, forfeits all right, title, and interest in the real property located at 919 Hilts Avenue, Los Angeles, CA (APN 4360-010-031), or the proceeds of any sale thereof.

5. The parties agree that, pursuant to the Asset Forfeiture Policy Manual (2025), Chapter 14, Sec. II.B. and 28 C.F.R. Part 9.8, upon a determination by the government that it can make the required representations set forth therein, the government will submit a restoration request to the Money Laundering, Narcotics and Forfeiture Section of the Department of Justice, seeking approval for any assets forfeited, including payments made pursuant to the money judgment of forfeiture, to be restored to the victims in this case, which may, in turn, satisfy in full or part any restitution order. Defendant has acknowledged that the Attorney General, or his designee, has the sole discretion to approve or deny the restoration request.

VOLUNTARY ASSET RESTRAINT AND/OR PAYMENTS

6. Defendant agrees to comply with all the provisions of the USAO Asset Agreement, which is attached as Exhibit B.

THE USAO'S OBLIGATIONS

7. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d. Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 371, 666, 1028A, 1341, 1343, 1956, and 1957, arising out of defendant's conduct described in the statement of facts set forth in Exhibit C to this agreement. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

NATURE OF THE OFFENSES

8. Defendant understands that for defendant to be guilty of the crime charged in the single-count Indictment, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343, the following must be true:

First, the defendant knowingly participated in a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property, and they directly or indirectly deceived the person about the nature of the bargain at issue;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate wire to carry out or attempt to carry out an essential part of the scheme.

9. Defendant understands that for defendant to be guilty of the crime charged in the single-count First Superseding Information, that is, Money Laundering, in violation of Title 18, United States Code, Section 1957, the following must be true:

First, defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from wire fraud, in violation Title 18, United States Code, Section 1343; and

Fifth, the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means a commercial bank and a bank insured by the Federal Deposit Insurance Corporation.

The term "criminally derived property" means any property constituting, or derived from, the proceeds obtained from a criminal offense. The government must prove that defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense.

## PENALTIES AND RESTITUTION

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1957, is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is:

30 years' imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

13. Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty. The parties currently believe that the applicable amount of restitution is more than $2,000,000 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. The parties agree that defendant has made a payment of approximately $1,245,757.50 to one of the victims in this case, and that this amount will be factored into the proposed restitution order in this case.

14. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part

of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

15. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

16. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and

that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

17. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts set forth in Exhibit C to this agreement and incorporated by reference, and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

18. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crimes of conviction.

19. Defendant and the USAO agree the two counts of conviction group under U.S.S.G. § 3D1.2(d), and the following applicable Sentencing Guidelines factors apply:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics: | | |
| Intended loss was greater than $2,000,000 and less than or equal to $15,000,000 | +16-+18 | U.S.S.G. § 2B1.1(b)(1)(I)-(J)[1] |
| Sophisticated Means | +2 | U.S.S.G. § 2B1.1(b)(10) |
| Convicted of 18 U.S.C. § 1957 | +1 | U.S.S.G. § 2S1.1(b)(2)(A) |
| Leader/Organizer/Extensive Activity | +4 | U.S.S.G. § 3B1.1(a) |

Defendant and the USAO agree that an upward adjustment between +16 and +18 should be applied under U.S.S.G. § 2B1.1(b)(1) for loss, but the parties reserve the right to argue within this range for the particular loss enhancement that should apply in this case. Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate, and without limitation of the foregoing, the USAO specifically reserves the right to seek a +2 enhancement for Abuse of Position of Trust pursuant to U.S.S.G. § 3B1.3.

20. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

[1] Based on the forthcoming November 2026 amendment to U.S.S.G. § 2B1.1(b).

21. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

22. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

23. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

24. Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 31 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $10,000,000; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing

conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 31 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $2,000,000.

WAIVER OF COLLATERAL ATTACK

26. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty. This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

27. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence

derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible. Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty pleas, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

28. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then: (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy

trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

29. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

30. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

31. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this

agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

32. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

33. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 19 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

34. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

35. Defendant understands that, except as set forth herein, and in any additional written agreement or addendum signed by all parties, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

//

//

//

//

//

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

36. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney

Kerry L Quinn
9/11/2026

KERRY L. QUINN
JUAN M. RODRIGUEZ
Assistant United States Attorneys
Date

Alexander Soofer (Sep 11, 2026 15:14:52 PDT)
9/11/26

ALEXANDER SOOFER
Defendant
Date

Michael G. Freedman
9/11/26

MICHAEL FREEDMAN, ESQ.
Attorney for Defendant
ALEXANDER SOOFER
Date

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

Alexander Soofer (Sep 11, 2026 15:14:52 PDT)
ALEXANDER SOOFER
Defendant

9/11/26
Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am ALEXANDER SOOFER's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

Michael J. Freedman 9/11/26

MICHAEL FREEDMAN, ESQ. Date
Attorney for Defendant
ALEXANDER SOOFER

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALEXANDER SOOFER,

Defendant.

CR No. 2:26-00077(A)-MWF

FIRST SUPERSEDING INFORMATION

[18 U.S.C. § 1957: Money Laundering; 18 U.S.C. § 982: Criminal Forfeiture]

The United States of America charges:

[18 U.S.C. §§ 1957, 2(b)]

On or about January 16, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant ALEXANDER SOOFER, knowing that the property involved represented the proceeds of some form of unlawful activity, knowingly engaged in and willfully caused others to engage in a monetary transaction of a value greater than $10,000, namely, a wire transfer in the approximate amount of $90,000 from an account at JPMorgan Chase ending in 6272, which property, in fact, was derived from specified unlawful activity, namely, Wire Fraud, in violation of Title 18, United States Code, Section 1343, as charged in the single-count Indictment.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offense set forth in the single-count First Superseding Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

ROGER A. HSIEH
Assistant United States Attorney
Chief, Major Frauds Section

KERRY L. QUINN
Assistant United States Attorney
Major Frauds Section

JUAN M. RODRIGUEZ
Assistant United States Attorney
Acting Chief, Public Corruption & Civil
Rights Section

**EXHIBIT B**

# USAO ASSET AGREEMENT

## Parties

1. The parties to this Asset Agreement ("Asset Agreement") are the United States Attorney's Office for the Central District of California (the "USAO") and ALEXANDER SOOFER (the "defendant") (collectively, the "Parties").

## Background

2. The parties are simultaneously entering into a plea agreement (the "Plea Agreement") to resolve the criminal charges in *United States v. Alexander Soofer*, 2:26-CR-77-MWF (the "Soofer criminal case").

3. The parties anticipate the Court will, in connection with the Soofer criminal case, issue a restitution order obligating defendant to repay victims of his criminal conduct. The parties have yet to agree on a final restitution amount but anticipate the amount will be more than $2,000,000.

4. Defendant desires to begin making payments toward his anticipated restitution obligation and will agree on a reasonable schedule for restitution payments in advance of sentencing, with payments being made to the Clerk of the Court by certified check or money order made payable to "Clerk, U.S. District Court," identifying the defendant's name and case number on the "memo" line, and delivering it to the Fiscal Clerk at 255 East Temple Street, Room 1178, Los Angeles, California 90012.

5. Defendant will cooperate with the USAO to enter into a stipulation for the Clerk of the Court to accept pre-judgment payments, determine a reasonable schedule for payment of restitution, and to this end, defendant will make available, upon USAO request, any and all records relevant to his personal and/or business finances.

6. Defendant understands that, to the extent defendant's restitution obligation is not paid in full by the time of his sentencing, the entry of a restitution order will create a lien in favor of the United States on all defendant's property and all defendant's rights to property. 18 U.S.C. § 3613(c) and (f).

7. Defendant agrees to pay the ordered restitution immediately unless, in the interest of justice, the Court provides for payment on a date certain or installments, in which case the length of time ordered by the Court over which scheduled payments are made shall be the shortest time in which full payment of the ordered restitution can reasonably be made. 18 U.S.C. § 3572(d)(1)-(2).

8. Defendant understands that notwithstanding any payment schedule set by the Court, the United States may enforce the full

judgment imposing a fine or restitution in accordance with the practices and procedures for the enforcement of a civil judgment under State or Federal law, including the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001-3308. 18 U.S.C. § 3613(a) and (f).

9. Defendant's liability to pay the ordered restitution and any ordered fine exists for the later of 20 years from the entry of judgment or 20 years after defendant's release from imprisonment, and in the event of death, defendant's estate will be held responsible for any unpaid balance of restitution. 18 U.S.C. § 3613(b).

10. The parties also anticipate the Court will enter a Preliminary Order of Forfeiture and Final Order of Forfeiture in the Soofer criminal case, forfeiting all of defendant's and Titleholder's right, title, and interest to the Forfeitable Property, as defined in the Plea Agreement, to the United States.

**Purpose and Duration of Asset Agreement**

11. The Parties enter into this Asset Agreement out of a mutual desire to preserve and/or liquidate defendant's assets to satisfy the assessment, fine, and/or restitution to be imposed in the Soofer criminal case and to liquidate Forfeitable Property, as defined in the Plea Agreement.

12. The Parties agree to be bound by the terms of this Asset Agreement upon execution. Court approval of its terms is not required to bind the parties.

13. The Parties shall abide by the terms of this Asset Agreement until the later of: (a) the date any all assessments, fines and/or restitution have been satisfied in the Soofer criminal case, and (b) the date all Forfeitable Property, as defined in the Plea Agreement, have been forfeited to the United States.

**Asset Transfer Restriction / Asset Preservation**

14. Except as set forth below in Paragraph 20, defendant agrees not to transfer any interest in real or personal property with a value exceeding $10,000, whether calculated individually or cumulatively. This includes any property held directly, indirectly, individually, jointly, or by any other means, and applies to all interests and property held or owned under any name, including, but not limited to, trusts, partnerships, and corporations. Defendant acknowledges this asset transfer restriction, among other things, constitutes an aggregate monthly spending limit, and absent written approval by the USAO, defendant cannot spend more than $10,000 a month on personal expenses. Personal expenses include the costs of necessary clothing, transportation, and food expenses incurred by defendant for himself and his dependents (as defined under 26 U.S.C. §152). Absent written agreement from the USAO, the only exemptions to this asset transfer restriction are: (a) for business expenses

associated with the costs of operating a retail business operated under the legal name YL SM 26 Inc.; and (b) for legal fees incurred in connection with the Soofer criminal case. Defendant also acknowledges this asset transfer restriction requires defendant to maintain and not commit waste of his assets including all real property, which itself includes, but is not limited to, the Hilts Property as defined in Paragraph 16 below, nor shall he permit such assets to be used or occupied in any manner that is likely to diminish their value, nor shall he fail to make payments on any obligations secured by his assets or otherwise take or fail to take actions that would diminish their value or make them susceptible to foreclosure or subject to liens being placed on them, and he shall not obtain, take out, or draw down on any loans or lines of credit or other debt obligations secured by his assets without prior USAO approval; to the extent defendant believes he needs to obtain, take out, or draw down on loans or lines of credit for payment of the expenses or fees exempted from the asset transfer restriction, he will obtain prior permission from the USAO before doing so.

15. Defendant shall make all financial records relevant to his personal or business expenses available for inspection at the USAO's request to ascertain compliance with both his obligations in the preceding paragraph and defendant's other obligations under this Asset Agreement and the Plea Agreement.

**Real Property**

16. Defendant agrees that in lieu of forfeiture of the real properties located at 919 Hilts Avenue, Los Angeles, CA 90024 (APN 4360-010-031, the "Hilts Property"), 2414 W 48th Street, Los Angeles, CA 90043 (APN 5015-038-001, the "W48th Property"), 6149 S Harvard Boulevard, Los Angeles, CA 90047 (APN 6002-022-016, the "Harvard Property"), and 7900 S Vermont Ave, Los Angeles, CA 90044 (APN 6032-001-033, the "Vermont Property"), a money judgment of forfeiture in the amount of $1,960,463.39 will be entered following entry of his change of pleas, as set forth in the Plea Agreement.

17. Defendant agrees to take whatever steps are necessary to cause the Court to enter the money judgment of forfeiture as soon as his change of pleas are entered pursuant to the Plea Agreement.

18. Defendant further agrees pay to the United States the full amount of the money judgment of forfeiture on the following schedule, with payments to be made no later than the listed dates:

| Date | Amount |
|---|---|
| 12/31/2026 | $500,000 |
| 3/31/2027 | $500,000 |

6/30/2027 $500,000

9/30/2027 $460,463.39

19. Defendant agrees that if he does not make any and all of the payments pursuant to this schedule, then defendant, on behalf of himself and as the managing member of The Lucky Lizard LLC, forfeits all right, title, and interest in the Hilts Property, pursuant to the Plea Agreement. Without limitation of the Asset Transfer restrictions in Paragraph 14 including restrictions on waste and requirements to preserve and maintain assets, defendant agrees that, to preserve the Hilts Property for potential forfeiture should he fail to pay the money judgment of forfeiture and for potential restitution should any amount be due and owing on a future restitution obligation, he will maintain the Hilts Property in accordance with the maintenance and asset preservation requirements and restrictions set forth in Paragraph 24, consistent with his obligations to maintain and preserve the W48th Property, the Harvard Property, and the Vermont Property.

20. As set forth below, defendant is agreeing to sell the W48th Property, the Harvard Property, and the Vermont Property and apply the proceeds toward his anticipated restitution obligation in the Soofer criminal case, and thus, the parties anticipate defendant will have sold those properties and thus no longer have a forfeitable interest in those properties should he default on his obligation to pay the money judgment of forfeiture.

21. Defendant agrees to effectuate the immediate sale of the W48th Property, the Harvard Property, and the Vermont Property (collectively, the “Subject Properties”), in accordance with the terms and conditions of this Asset Agreement, as set forth in Paragraphs 22 through 29. Defendant further agrees to apply the proceeds from the sale of the Subject Properties toward payment of his anticipated restitution obligation in the Soofer criminal case prior to the entry of judgment, with payments being made to the Clerk of the Court by certified check or money order made payable to “Clerk, U.S. District Court,” identifying the defendant’s name and case number on the “memo” line, and delivering it to the Fiscal Clerk at 255 East Temple Street, Room 1178, Los Angeles, California 90012.

22. Defendant further agrees to execute whatever documents are necessary to effectuate the sale of the Subject Properties pursuant to this Asset Agreement.

23. Defendant agrees to immediately list and sell the Subject Properties on the open market using the services of a licensed California real estate broker (“Seller’s Broker”) selected or approved by the USAO, and provide the USAO with links to the listings.

24. Without limitation of the Asset Transfer restrictions in Paragraph 14 including restrictions on waste and requirements to preserve and maintain assets, defendant agrees that, until the Subject Properties are sold pursuant to this Asset Agreement, defendant will:

a. continue to timely make payments on any and all obligations that may be owing or may become due on the Subject Properties including, without limitation, the following: applicable state, county, and municipal estate taxes, fees, and penalties; mortgage payments; home equity loan payments; utilities; insurance; and homeowner's fees; and

b. maintain the Subject Properties in good condition and repair. Excepting normal wear and tear, defendant shall keep the Subject Properties free from all hazards, defects, and debris; maintain all heating, air conditioning, plumbing, electrical, gas, oil, and other facilities, utilities, and fixtures in good working order; and perform regular sanitation and waste removal and landscaping. In no event shall the defendant cause any material alteration to the Subject Properties.

c. Defendant will not transfer title or any interest of the Subject Properties or encumber defendant's ability to convey free and clear title in any way, including, without limitation, by rental agreement, mortgage, or deed of trust.

25. The offering sales prices for the Subject Properties shall be determined by the defendant and Seller's Broker in good faith, subject to the approval of the USAO, and in furtherance of the mutual desire of defendant and the USAO to promptly sell the Subject Properties for the greatest possible sale price. If requested, defendant shall make the Subject Properties available for inspection by the United States Marshal's Service ("USMS") or contractors selected by the USAO or USMS.

26. All written purchase offers received by Seller's Broker shall immediately be submitted to the USAO (by email to usacac.FinLit@usdoj.gov and to the Assistant United States Attorney(s) assigned to the case). If deemed unreasonable by the USAO, defendant agrees to reject the written purchase offer and continue marketing the Subject Properties. If deemed reasonable by the USAO, defendant will accept the written purchase offer, and defendant and the USAO shall designate a mutually agreeable escrow company and title insurance provider. Any escrow period shall be no longer than 90 days, absent written agreement of the USAO.

27. Upon receipt of Seller's Estimated Settlement Statements, defendant shall immediately submit them to the USAO (by email to usacac.FinLit@usdoj.gov and to the Assistant United States Attorney(s) assigned to the case). Such statements shall set forth the total amount of consideration to be paid by the qualified buyers for the Subject Properties, or "gross sales proceeds," and shall identify all proposed deductions or costs from such proceeds. Unless

expressly authorized by this Asset Agreement, any other deductions or cost from the gross sales proceeds are not authorized, including but not limited to any transfers of interest that give rise to a cause of action under 28 U.S.C. § 3304. Without limitation of the foregoing, defendant agrees he will disclose any and all affiliations with any potential buyer(s) of the Subject Properties, he will not receive any compensation or consideration from the buyer(s) or anyone else outside of the escrow in connection with the sales of the Subject Properties, and all payments for such sales shall be made in accordance with approved escrow instructions, which shall be provided to the USAO.

28. The USAO agrees that the following deductions or costs from the gross sales proceeds are acceptable:

a. All costs or necessary repairs approved by the USAO;

b. All commissions to the Seller's Broker and the real estate agent representing the qualified buyer if the total commissions are 6% or less;

c. All seller escrow fees, recording fees, title fees, closing fees, and other miscellaneous costs routinely paid in escrow;

d. All applicable federal, state, county, and municipal estate taxes, fees, and penalties; and

e. All financial obligations secured by and recorded against the Subject Properties more than twelve months prior to the execution date of the Plea Agreement in the Soofer criminal case, such as mortgages or lines of credit by an entity or financial institution that routinely extends mortgage or lines of credit.

29. After all authorized costs and deductions, all of the remaining proceeds due to the defendant, or "net sales proceeds," shall be paid toward defendant's anticipated restitution obligation in accordance with the payment instructions set forth in Paragraphs 4 and 21.

30. The parties agree that in light of defendant's agreement to the money judgment of forfeiture and his obligations to pay that judgment, and the other agreements defendant has made to sell the Subject Properties and make proceeds available for restitution, defendant does not need to take immediate steps to sell the Hilts Property or immediately make his equity in or interest, right, or title to the Hilts Property available for restitution, but he understands the USAO reserves all rights to execute against the Hilts Property (and any and all of defendant's other assets) should any amount be due and owing on defendant's anticipated restitution obligation following entry of a restitution order in the Soofer criminal case.

**Breach / Materiality of All Terms & Conditions**

31. Defendant agrees all of his obligations in the Asset Agreement are material, and if he fails to comply with any of those

obligations, he will be in breach of both this Asset Agreement and his Plea Agreement.

32. Defendant further understands and agrees that should he breach this Asset Agreement, including by failing to sell the Subject Properties in accordance with the terms and conditions set forth in the Asset Agreement or by making or trying to make assets unavailable to satisfy his anticipated restitution obligation, he could be subject to additional criminal penalties for violations of federal criminal law, including without limitation obstruction of justice in violation of 18 U.S.C. § 1503.

DATED:

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
& Chief, Criminal Division

Kerry L Quinn
_____________________________
KERRY L. QUINN
JUAN M. RODRIGUEZ
Assistant United States Attorneys

Attorneys for the United States of America

DATED: 9/11/26

Michael G. Freedman
_____________________________
MICHAEL FREEDMAN, ESQ.
Attorney for Defendant ALEXANDER SOOFER

DATED: 9/11/26

Alexander Soofer (Sep 11, 2026 15:14:52 PDT)
_____________________________
ALEXANDER SOOFER
Defendant

**EXHIBIT C**

**EXHIBIT C TO PLEA AGREEMENT FOR DEFENDANT ALEXANDER SOOFER**

**STATEMENT OF FACTS SUPPORTING PLEA AGREEMENT**

Defendant ALEXANDER SOOFER ("defendant") stipulates and agrees that he committed the following criminal activity, all of which he stipulates and agrees was part of the same course of conduct and common scheme or plan, and all of which is relevant conduct under United States Sentencing Guideline Section 1B1.3:

**I. WIRE FRAUD SCHEME**

**A. Background**

At all relevant times, defendant was a resident of Los Angeles, California.

Defendant ran an organization that provided services to people experiencing homelessness or at risk of experiencing homelessness, through business entities including Abundant Blessings from Above, Inc., a California For-Profit S-Corporation ("ABFA") and Abundant Blessings, Inc., a California 501(c)(3) Not-profit Organization ("ABI," and collectively with ABFA, "Abundant Blessings").

Defendant, through ABI, obtained funding from the City of Los Angeles (the "City"), the County of Los Angeles (the "County"), and the United States Department of Housing and Urban Development ("HUD"), through contracts administered by the Los Angeles Homeless Services Authority ("LAHSA"), to provide services to participants in homeless housing programs.

Defendant, through ABFA, also obtained funding for homeless housing services from a non-profit organization called Special Service for Groups Inc. ("SSG"), which had a division called Homeless Outreach Program Integrated Care System ("HOPICS"), and which itself obtained funding through programs administered by LAHSA. Defendant,

through ABFA, entered into contracts with SSG/HOPICS to provide homeless housing services to participants at SSG/HOPICS sites.

**B. Scheme to Defraud**

Between approximately January 2020 and at least January 2025, in Los Angeles County and elsewhere, defendant knowingly and with intent to defraud, devised, intended to devise, and participated in a scheme to defraud various entities, including the City, the County, HUD, LAHSA, and SSG/HOPICS, out of taxpayer money earmarked for homeless housing.

1. <u>LAHSA Scheme</u>

Defendant entered into contracts with LAHSA on behalf of ABI to provide homeless housing services at various sites in Los Angeles County. In executing these contracts, defendant made false representations concerning how funding obtained from these contracts would be spent, including false representations that the money he obtained from LAHSA would be used exclusively for homeless housing services, when, in fact, he instead intended to and did use millions of dollars of this money for other expenses. Defendant also made false representations concerning his intended billing practices, falsely representing that the bills he submitted to LAHSA would include only allowable expenses and not include false or fraudulent submissions, when, in fact, he intended to and did include numerous false and misleading submissions in bills he submitted to LAHSA.

Among the misleading billing practices, defendant billed LAHSA for expenses that were not allowed under his contracts. For example, defendant billed LAHSA for hundreds of thousands of dollars in construction costs when construction was not something he had contracted with LAHSA to provide.

Defendant also lied about making payments to third party vendors for homeless housing services, such as catering, security, and building maintenance. In submitting bills to LAHSA and providing backup documentation, defendant took steps to make it appear as though he was making significant payments -- totaling more than $1 million -- to vendors for services provided to participants at homeless housing sites or payments related to such services, when, in fact, defendant was instead diverting these payments to his own bank accounts and misappropriating the money for himself.

Defendant further lied about rent payments being made for properties being used for homeless housing, making it falsely appear that he was leasing these properties from third-party landlords at a market rate, when, in fact, defendant was instead paying himself an above-market-rate rent for these properties and misappropriating the money obtained from LAHSA for rental payments made to house participants at these sites.

To cover up his fraud, defendant fabricated fake and misleading invoices supposedly from vendors and landlords -- at times stealing the names, addresses, and logos of real companies -- to make it appear that the vendor and rental payments were legitimate. Defendant also fabricated related backup documents to support the billing fraud, including fake lease agreements with fictional landlords and fake bids from impersonated vendors.

Defendant also falsely represented in contracts with LAHSA that he would provide homeless housing participants with three meals a day, which the contracts defined as meals that were healthy, balanced, and met participants' nutritional needs. Defendant did not always provide homeless housing participants with the contractually

required meals, and at times and at some sites, he provided only limited food items such as Ramen noodles, canned beans, and breakfast bars, instead of serving the healthy, balanced, and nutritionally dense meals required under LAHSA contracts.

Defendant additionally lied about individuals supposedly serving on the board of Abundant Blessings, falsely representing certain individuals were board members, when these individuals either did not exist or had never heard of Abundant Blessings.

2. SSG/HOPICS Scheme

Defendant also entered into contracts with SSG/HOPICS on behalf of ABFA to provide homeless housing services to participants at SSG/HOPICS-funded sites. Defendant knew SSG/HOPICS obtained its funding through LAHSA and that LAHSA in turn obtained funding from the City and the County and other taxpayer-funded sources.

Under his contracts with SSG/HOPICS, defendant was paid a flat rate for each participant or family of participants housed at defendants' sites, based on the number of participants or families housed at each site on each day. SSG/HOPICS then billed LAHSA for reimbursement for these payments pursuant to agreements SSG/HOPICS entered with LAHSA.

For defendant to be entitled to payment, defendant was required to provide the required scope of services under his contracts with SSG/HOPICS, which included meal services that defendant did not always provide to participants at his sites.

Defendant was also required to submit monthly invoices detailing the names of each participant or family of participants housed during the month and the number of days each participant or family stayed at each site, calculating the total amount owed to defendant based on

the number of participants or family of participants housed each day at each site. SSG/HOPICS also required defendant to submit daily sign-in sheets from all participants or families of participants (with heads of household signing on behalf of families) to confirm the dates the participants or families stayed at ABFA sites.

SSG/HOPICS required all participants receiving services to be eligible for those services (that is, they were required to be homeless or at risk of experiencing homelessness) and for all participants to be enrolled in the Homeless Management Information System ("HMIS"), which is a database maintained for homeless housing providers and administrators of grant funding.

One way for a participant to become enrolled in HMIS and entitled to services was for a homeless housing provider to prepare a form called an "OBSERVATION OF HOMELESS STATUS FORM" ("Homeless Observation forms") with the provider certifying that the provider observed the participant residing in a place not meant for human habitation such as a street, car, park, abandoned building, bus station, airport, or campground.

SSG/HOPICS required ABFA to maintain files for all participants and to make those files available for inspection upon request in part to ensure all billed-for participants were entitled to services being billed.

Co-conspirator 1 ("CC-1") worked at SSG/HOPICS. CC-1's duties and responsibilities at SSG/HOPICS included being responsible for referring participants to homeless housing sites that SSG/HOPICS operated either directly or indirectly through subcontractors like ABFA.

In furtherance of the scheme to defraud, defendant gave, offered to give, and agreed to give kickback payments to CC-1 intending to influence and reward CC-1 in the performance of CC-1's official duties. In exchange for accepting those payments, CC-1 agreed to perform official acts, including, among others, making priority referrals of participants to defendant's homeless housing sites to maximize the amount defendant could bill and receive under his contracts with SSG/HOPICS.

Defendant paid kickback payments to CC-1 through checks defendant wrote out in various amounts, making the checks payable to CC-1 or to a consulting company CC-1 controlled ("CC-1's Consulting Company"). Defendant and CC-1 disguised these payments to make it appear they were for consulting work (including through notations in memos of checks referencing "consulting"), but in reality the payments were for priority referral of participants, and the payments were calculated based on the number of referrals CC-1 made to defendant each month.

CC-1 also sent defendant referrals of so-called "ghost" participants for defendant to bill SSG/HOPICS for these "ghost" participants, falsely claiming the "ghost" participants were staying at and receiving services at defendant's sites and seeking payment for these fake services when the "ghost" participants never stayed or received services at these sites.

CC-1 also directed defendant, including in text messages sent to defendant, to lie and to have his staff lie to anyone asking whether the "ghost" participants were staying at ABFA sites and falsely claim the "ghost" participants were staying at these sites when they were

not, and defendant and his staff at times did lie and falsely claim the "ghost" participants were staying at the sites.

In furtherance of the scheme, CC-1 created false and misleading "Welcome Letters" supposedly provided to the "ghost" participants, and CC-1 provided these letters to defendant for inclusion in files defendant maintained for the "ghost" participants in the event those files were audited or inspected.

CC-1 also directed defendant to fabricate, and defendant did fabricate or directed the fabrication of, false and misleading Homeless Observation forms, falsely claiming defendant or one of his staff had observed the "ghost" participants residing in a place not meant for human habitation and thereby falsely certifying that the "ghost" participants were eligible for homeless housing services. With CC-1's knowledge and approval, defendant included the fake Homeless Observation forms in files maintained for "ghost" participants in the event the files were audited or inspected.

CC-1 also provided defendant with fabricated sign-in sheets for the "ghost" participants to make it falsely appear that the "ghost" participants had stayed at ABFA sites and signed sign-in sheets while staying at the sites.

At other times, with CC-1's knowledge and approval, defendant forged or directed others to forge "ghost" participants' signatures on sign-in sheets. With CC-1's further knowledge and approval, defendant submitted the fabricated sign-in sheets to SSG/HOPICS in connection with the monthly invoicing process. Also with CC-1's knowledge and approval, defendant submitted false and misleading invoices to SSG/HOPICS falsely claiming the "ghost" participants had stayed at ABFA sites, seeking payments for "ghost" participants based

on the flat daily rate SSG/HOPICS paid for each participant or family of participants.

In furtherance of the scheme and to accomplish an essential part of it, CC-1 sent emails to defendant with logs or schedules of participants, including "ghost" participants, supposedly staying at defendant's sites, and defendant sent emails or directed emails to be sent to CC-1 and others at SSG/HOPICS regarding monthly invoices and billing for participants, including "ghost" participants, and sign in sheets for participants.

Defendant and CC-1 split the proceeds of the false and misleading billing in the names of the "ghost" participants, with defendant adding these proceeds to the checks he made out to CC-1 and CC-1's Consulting Company and that he delivered to CC-1 in person at pre-arranged meeting spots outside of offices maintained by Abundant Blessings and SSG/HOPICS. In total, between approximately January 2020 and January 2025, defendant paid CC-1 approximately $180,000 in bribes and kickbacks.

In addition, defendant also falsified or forged or directed others to falsify or forge additional participants' signatures on sign in sheets to inflate his billing to SSG/HOPICS, falsely representing to SSG/HOPICS that participants who had left his facilities were still residing at those facilities in order to continue to bill for them after they had left, and he submitted these falsified or forged sign in sheets to SSG/HOPICS seeking payment for these inflated billings.

* * *

Defendant's homeless housing schemes caused the City, the County, HUD, LAHSA, and SSG/HOPICS to disburse more than $23 million

into bank accounts controlled by defendant, where the money was supposed to be used for homeless housing services, but instead of using the money for its intended purposes, defendant misappropriated a significant portion, more than $2 million, for his own personal enrichment and for businesses unrelated to homeless housing.

**C. Use of the Wires**

As one example of the use of interstate wires to execute an essential part of the fraudulent scheme, on or about June 21, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant, for the purpose of executing the scheme to defraud described above, transmitted and caused the transmission of an interstate wire in connection with the execution of a contract, ID Number AD-ISP-AEPH-013-01, executed through the DocuSign platform, for defendant to provide homeless housing services at a hotel and motel in the Los Angeles area, using approximately $250,800 in funding being administered by LAHSA.

**II. MONEY LAUNDERING**

On or about January 16, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant, knowing that the property involved represented the proceeds of some form of unlawful activity, knowingly engaged in and willfully caused others to engage in a monetary transaction of a value greater than $10,000, namely, a wire transfer in the approximate amount of $90,000 from an account at JPMorgan Chase ending in 6272, which property, in fact, was derived from specified unlawful activity, namely, Wire Fraud, in violation of Title 18, United States Code, Section 1343, as discussed above.

The $90,000 wire transfer, which was proceeds of wire fraud, was used to pay a credit card that had been used to purchase a number of personal goods and services.

## III. SENTENCING ENHANCEMENTS

### A. Sophisticated Means

Defendant agrees his criminal conduct was sophisticated and qualifies for the sophisticated means enhancement. Among other indicia of sophistication, defendant created numerous companies and/or DBAs to try to hide the fact that he was diverting millions of dollars of fraud proceeds to himself, and he created or directed the creation of numerous fake and misleading invoices and other fake documents to support his fraudulent billings and fake invoicing to make it seem like he was sending money to legitimate third party companies. At times, he even stole the names and company logos of real companies as part of the fraud.

Among the fake supporting documents defendant created and submitted to LAHSA as part of the fraud were fake bids and invoices supposedly submitted to him by catering companies to provide meal services at his sites; defendant himself created or directed the creation of these fake bids and invoices. Defendant also directed the creation of back-dated check request forms to make it seem like he had gone through a required procedure to pay invoices (many of which were themselves fake).

With regard to the money stolen from SSG/HOPICS, defendant took steps to paper the files of the "ghost" participants to make it falsely appear that the "ghost" participants were real participants residing at defendant's homeless housing sites. Among other steps, defendant created or directed the creation of fake Homeless

Observation Forms for the "ghost" participants, and he filed or directed the filing of fake Welcome Letters in files maintained for the "ghost" participants.

Defendant also did things to make it appear that "ghost" participants and other forged-signature participants were still staying at his sites, including lying or directing others to lie to monitors or other grantor representatives about the whereabout of the "ghosts" and at times directing others to toss bed sheets or mess up bedding to make it appear people were sleeping in empty beds. Defendant was also calculated in identifying participants for whom sign in sheets could be faked -- particularly looking for participants who were discharged to housing that was separately funded from his funding sources -- so that his funders or grantors would not know about the fake billing.

Defendant also took advantage of the limited oversight grantors were able to have over his sites, and the honor code to which they held providers in their billing, particularly in terms of the number of individuals or families being housed at the sites.

**B. Leader / Organizer**

Defendant also admits he was the leader or organizer of criminal conduct involving five or more criminally culpable participants and conduct that was also otherwise extensive. In addition to working with CC-1, defendant directed at least four staff members at Abundant Blessings to create fake invoices, fake bids, back-dated check request forms, and fake sign in sheets, and the scope of the fraud and number of years it was ongoing, including the scope of the fake billing and creation of fake backup documentation, also shows it was otherwise extensive.

CERTIFICATION OF DEFENDANT

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT ("statement of facts") in its entirety. I have had enough time to review and consider this statement of facts, and I have carefully and thoroughly discussed every part of it with my attorney. I agree that this statement of facts is accurate and correct and is sufficient to support the pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 of the plea agreement.

Alexander Soofer (Sep 11, 2026 15:14:52 PDT)

ALEXANDER SOOFER

9/11/26

DATE

CERTIFICATION OF DEFENSE COUNSEL

I am ALEXANDER SOOFER's attorney. I have carefully and thoroughly discussed every part of this statement of facts with my client and agree that it is sufficient to support the pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 of the plea agreement.

Michael G. Freedman

MICHAEL FREEDMAN, ESQ.

9/1126

DATE